# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Gary, : 
: 
              Petitioner : 
: 
        v. : No. 581 C.D. 2018
: Submitted: August 24, 2018
Workers' Compensation Appeal : 
Board (J.D. Eckman, Inc.), : 
: 
              Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**             **FILED:  December 4, 2018**


Robert Gary (Claimant) petitions, *pro se*, for review of a March 16, 2018 order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of a Workers' Compensation Judge (WCJ) in this thrice-remanded matter. In her February 27, 2017 decision, the WCJ denied and dismissed Claimant's (i) petition to review compensation benefits seeking to modify the description of his work injury, (ii) his petition to reinstate compensation, and (iii) his petition for penalties alleging that his employer, J.D. Eckman, Inc. (Employer), failed to pay medical bills related to his work injury. For the reasons that follow, we affirm.

This matter dates back to May 20, 2004, when Claimant sustained work-related "bilateral shoulder rotator cuff tendonitis" and as a result, received workers' compensation benefits pursuant to a notice of temporary compensation payable (NTCP), subsequently converted to a notice of compensation payable (NCP). (February 27, 2017 WCJ Decision, Finding of Fact (F.F.) ¶ 1.) Following a series of supplemental agreements, on June 5, 2007, the WCJ circulated a decision in which she approved a Compromise and Release Agreement (C&R Agreement) between the parties. (*Id.* F.F. ¶ 3; June 5, 2007 WCJ Decision (6/5/2007 Decision); C&R Agreement.) The WCJ indicated that a petition to modify compensation benefits filed by Claimant on April 19, 2007 had been amended to a petition to approve a C&R Agreement, that Claimant had testified credibly in support of the C&R Agreement and that he understood its full legal significance. (6/5/2007 Decision, F.F. ¶¶ 2-3.) The C&R Agreement described the injury as "bilateral rotator cuff tendonitis; status post right rotator cuff repair" and further stated:

> Upon circulation of an Order approving the instant Agreement, Claimant is to be paid the gross settlement in a lump sum payment of $140,000. This amount represents the full and final restitution and payment of, and for, all past, present and/or future indemnity or medical claims against the instant Employer/Workers' Compensation insurer. Employer/insurer shall continue payment of indemnity benefits until June 4, 2007, contingent upon approval of this Agreement and payment of the aforesaid lump sum. Thereafter, no party shall seek further indemnity payments from Employer or Insurer for wage loss which is alleged to be causally related to the injury or conditions described in paragraph 4.

(C&R Agreement ¶ 7.) The parties acknowledged that the C&R Agreement resolved "any and all claims related to, or arising from, any and all injuries (whether presently

known and diagnosed and/or unknown or undiagnosed) related to, or sustained in or as a result of, the subject work-related incident" of May 20, 2004.[1] (*Id*. ¶ 18.)

On March 25, 2013, Claimant filed a review/reinstatement petition alleging a worsening of his condition and decreased earning power related to the May 20, 2004 work injury, and further asserted that he was not compensated for his left shoulder injury pursuant to the terms of the C&R Agreement. On April 3, 2013, he filed a penalty petition, alleging that as of April 1, 2013, Employer violated the Workers' Compensation Act (Act)[2] and its rules and regulations. Claimant also filed a motion for recusal, which was heard and denied at an April 15, 2013 hearing.[3] On June 11, 2013, the WCJ issued its order denying Claimant's petitions, on the grounds that they were barred by the C&R Agreement. The WCJ made the following salient findings of fact:

> 9. Claimant alleges that the [C&R Agreement] should be set aside because he was unrepresented and because bilateral shoulder biceps tendonitis and/or [tendinopathy] was not included in the description of injury. However, the [C&R Agreement] clearly indicates that the Agreement resolves any and all claims for any and all injuries whether presently known and diagnosed and/or unknown or undiagnosed. Therefore, [C]laimant's argument must fail.

---

[1] The C&R Agreement stated that the work injury occurred on May 24, 2004. However, the Decision Rendered Cover Letter of the June 5, 2007 decision correctly reflects the May 20, 2004 injury date.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. 77 P.S. §§ 1–1041.1, 2501–2708.

[3] The hearing transcript indicates that Claimant requested the recusal of the WCJ because "every time I come before you, I have not had anything ruled next to me against the insurance carrier or [Employer's attorney]." (April 15, 2013 Hearing Transcript (H.T.) at 9.) Claimant further asserted that the WCJ had received an *ex parte* communication from Employer's attorney; however, Claimant admitted that in fact Employer's attorney had sent the WCJ a letter and copied Claimant on the letter. The request for recusal was denied. (*Id*. at 11.)

10. Claimant submitted into evidence an October 2, 2012 report from Dr. G. Russell Huffman, in which he advises that he had not seen [C]laimant for a period of four years, and that [C]laimant had complaints of pain in both shoulders. The doctor wished to review MRIs. Exhibit C-1.

11. Claimant submitted into evidence an April 12, 2013 note from Dr. Huffman advising that [C]laimant is scheduled for left shoulder surgery. Exhibit C-1.

12. Claimant also submitted into evidence a September 12, 2006 report from Dr. Huffman in which he indicates that [C]laimant had reached maximum medical improvement[,] that both [C]laimant's right and left shoulder conditions were related to his work injury, and that [C]laimant would likely have further symptoms down the road with regard to his shoulders. The doctor stated that [C]laimant would likely be precluded from heavy labor or overhead work in the future. Exhibit C-3.

13. The documents submitted demonstrate that, at the time he entered into the Agreement, [C]laimant was aware that his work injury was bilateral in nature and that he would likely have further symptoms. Based upon his testimony at the Compromise & Release hearing, [C]laimant was aware he would bear the cost of future medical treatment. Presumably, this is why he bargained *for more money than was recommended by the mediating judge*.

14. Having failed to take an appeal from the June 5, 2007 decision approving the Compromise & Release Agreement, [C]laimant may not now challenge the validity of the Agreement or the Order approving the Agreement.

(June 11, 2013 WCJ Decision and Order, F.F. ¶¶ 9-14.) Claimant appealed, and on January 27, 2014, the Board affirmed in part, finding that the WCJ had not erred in denying Claimant's request for recusal, but remanded to the WCJ to "review the

4

existing record and make findings and conclusions regarding the parties' knowledge of a biceps tendinopathy diagnosis and whether there was any fraud or concealment on [Employer's] part in relation to the [C&R Agreement]…." (January 27, 2014 Board Opinion and Order at 7.) The Board explained that Claimant had stated on the record that Employer had engaged in fraud and misrepresentation regarding his injury description in the C&R Agreement, and his medical documents reflected the fact that he has a biceps tendinopathy diagnosis, raising the factual question of whether Claimant or Employer knew of that diagnosis at the time they entered into the C&R Agreement. (*Id.* at 5.) Thus, the Board determined, a factual determination was essential to evaluate whether there has been any fraud or concealment on Employer's behalf that would constitute grounds for setting aside the C&R Agreement. (*Id.*) Claimant appealed to this Court, which quashed the appeal on the basis that the Board order was a non-final interlocutory order. (April 22, 2014 Order.)

A hearing was held on July 24, 2014, and the WCJ issued a November 6, 2014 Decision and Order, again denying Claimant's petitions; the WCJ concluded that both parties were given the opportunity to argue the issue and there was no evidence that Employer engaged in any fraud or concealment to warrant setting aside the C&R Agreement. (November 6, 2014 WCJ Decision and Order.) Claimant appealed, and the Board remanded a second time, with instructions for the WCJ to issue findings as to whether the parties' briefs were timely filed and if appropriate, for the WCJ to receive the briefs; the Board further directed the WCJ to make appropriate determinations based on the entire record addressing Claimant's petitions. (December 7, 2016 Board Opinion and Order.) The Board noted that Claimant had, meanwhile, filed additional petitions in February and July of 2015, including "a petition for additional compensation from subsequent injury and two

5

petitions seeking multiple relief in the nature of modification, penalty, reinstatement, review, review offset, set aside, and a claim alleging disfigurement in the nature of scars and biceps deformity, an incorrect injury description, unpaid medical bills, worsening of his condition, an injury causing decreased earning power, a violation of the Act, and subrogation for Social Security." (*Id*. at 3.) These additional petitions were dismissed by the WCJ on multiple grounds, including that they were frivolous and were barred by the 2007 decision approving the C&R Agreement. The Board affirmed the dismissal, noting that it did not do so in reliance on the merits of the approval of the C&R Agreement, as that matter remained in litigation; Claimant appealed to this Court, and in a May 17, 2017 opinion, this Court affirmed the Board, concluding that Claimant's sole avenue to litigate the validity of the C&R Agreement was to proceed with his appeal from the WCJ's 2014 decision. (Board's May 25, 2016 Order; *Gary v. Workers' Compensation Appeal Board (JD Eckman Inc.)* (Pa. Cmwlth., No. 1153 C.D. 2016, filed May 17, 2017).

The WCJ held a remand hearing on April 12, 2016, at which time she acknowledged the timely filing of briefs from the parties. On April 25, 2016, the WCJ issued a Decision and Order, again denying Claimant's reinstatement, review, and penalty petitions. (April 25, 2016 Decision and Order.) The WCJ acknowledged having read the parties' briefs, and found that Claimant's brief contained his *admission* that an MRI was performed in 2011 and that he was treated by Dr. Huffman, and that he was aware of biceps tendinopathy on June 26, 2013; however, the WCJ found that Claimant's brief did not cite to any diagnosis of biceps tendinopathy available to either of the parties before the June 2007 C&R Agreement. (*Id*., F.F. ¶ 3.) The WCJ further found that Claimant had failed to meet his burden of proving Employer engaged in fraud or concealment sufficient to set aside the

6

C&R Agreement and his petitions were barred by C&R Agreement. (*Id.*, Conclusions of Law ¶¶ 2-3.)

Claimant appealed, and the Board remanded for a third time, explaining that "although briefs are technically part of the record in workers' compensation cases, they are not evidence," and "statements made by a party in a brief do not constitute admissions, but are instead only nonbinding arguments."[4] (December 7, 2016 Board Decision and Order at 4.) The Board therefore concluded that because the WCJ explicitly found that Claimant made admissions related to the main issue in the case, which findings are not supported by substantial competent evidence of record, a remand was appropriate, and it directed the WCJ to "properly consider the parties' briefs as argument, and to properly consider the evidentiary record" in making her findings of fact. (*Id.* at 5.)

On February 27, 2017, the WCJ issued the instant decision, once again denying Claimant's petitions. (February 27, 2017 WCJ Decision and Order.) The WCJ indicated that the parties' briefs had been read and nothing in the arguments had changed her findings nor had the arguments been considered as evidence. The WCJ made new, comprehensive findings of fact, many of which mirrored the findings previously made, and included the following in regard to the medical evidence submitted:

---

[4] Items that are not part of the evidentiary record may not serve as the basis for findings of fact, or be considered by the appellate body on review. *Kimberly Clark Corporation v. Workers' Compensation Appeal Board (Bullard)*, 790 A.2d 1072, 1075-76 (Pa. Cmwlth. 2001). A remand may be appropriate where the WCJ's findings are not supported by substantial, competent evidence of record. *Steinhouse v. Workers' Compensation Appeal Board (A.P. Green Services)*, 783 A.2d 352, 356 (Pa. Cmwlth. 2001).

7

12. The only medical record submitted into evidence which pre-dates the Compromise & Release hearing of June 4, 2007 is Exhibit C-3, Dr. Huffman's September 12, 2006 report. In his report, Dr. Huffman discusses only "impingement and rotator cuff tears." He discussed problems with both shoulders. Nowhere in his report, does Dr. Huffman describe biceps tendinopathy as a separate and distinct diagnosis.

13. In his report of October 2, 2012, Dr. Huffman describes pain in the region of the biceps. However, even this report does not list biceps tendinopathy as a separate and distinct diagnosis. Exhibit C-1.

14. The "SCHOOL/WORK NOTE" dated April 12, 2013 is the only piece of medical evidence giving a separate and distinct diagnosis of biceps tendinopathy. This note postdated the Compromise & Release hearing by almost six years.

15. The medical evidence in the record that existed on June 11, 2013 does not prove that either Claimant or [Employer] knew of the separate and distinct diagnosis of biceps tendinopathy at the time of the Compromise & Release hearing. Because there is no evidence [Employer] knew of this separate and distinct diagnosis at the time they drafted the Agreement, there is no evidence [Employer] engaged in fraud or concealment, which would warrant setting aside the Compromise & Release Agreement.

(February 27, 2017 WCJ Decision and Order, F.F. ¶¶ 12-15.) Claimant appealed, and on March 16, 2018, the Board affirmed the decision of the WCJ. Claimant appeals to this Court.[5]

---

[5] This Court's review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether Board procedures or constitutional rights were violated. *Gahring v. Workers' Compensation Appeal Board (R and R Builders)*, 128 A.3d 375, 379 n.6 (Pa. Cmwlth. 2015).

Before this Court,[6] Claimant argues that the decisions of the Board and the WCJ were arbitrary, capricious, absurd, and made in contravention of the principles set forth in the Act. We find there is no merit to his argument. In workers' compensation appeals, we employ the terms "arbitrary" and "capricious" in reviewing the credibility determinations of a workers' compensation judge and the weight accorded to the evidence; we uphold these determinations unless they are made arbitrarily or capriciously, or are "so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render the basis irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 952 A.2d 14, 19 (Pa. Cmwlth. 2008). *Sub judice*, we consider the reasoned decision of the WCJ, informed by five separate hearings, beginning with a hearing where the WCJ provided a thorough explanation of the exact terms and legal significance of the C&R Agreement and elicited a clear and convincing affirmation from Claimant that he fully understood its terms. As noted, the Board remanded to the WCJ upon Claimant's appeal of its decision to deny Claimant's petitions, for a review of the existing record and an examination of the parties' knowledge of his medical condition at the time the C&R Agreement was made. The Board subsequently remanded to the WCJ to clarify that Claimant's brief was received and properly considered in the decision. Throughout this process, Claimant's rights to a full and fair adjudication were safeguarded.[7]

---

[6] After this Court received and docketed Claimant's appellate brief but inadvertently issued a dormant order for failure to file a brief and then vacated the dormant order, Claimant filed a "Petition for Correction or Modification of the Record," requesting that this Court accept for filing a new brief, identical in argument to the earlier brief. Claimant's petition was granted.

[7] In his brief, Claimant contends that the record remains open and is incomplete. This argument is without merit. During the April 15, 2013 hearing, the WCJ permitted Claimant to submit medical evidence notwithstanding Employer's counsel's objections based upon expiration of the

Claimant argues, with no supporting evidence whatsoever, that Employer's counsel acted in concert with the WCJ to deny him his right to a full and fair hearing. Claimant argues that the C&R Agreement should be set aside, as he entered into it without counsel, under duress and fraud by the WCJ, who he asserts lacked jurisdiction to approve the Agreement. Pursuant to Section 449(b) of the Act,[8] when parties agree to the compromise and release of a claim, the agreement must be submitted to a WCJ, who shall approve the agreement following a determination that the agreement contains all of the necessary information provided

---

statute of limitations. There was discussion among the parties as to any evidence still required for submission in order to complete the record, including a transcript from the hearing regarding the C&R Agreement. (April 15, 2013 H.T. at 28-29.) Employer's attorney agreed to mail the transcript to the WCJ so that the WCJ could close the record. (*Id*. at 27.) Claimant indicated that he had no other evidence to submit. (*Id.* at 24-25.) Despite a stipulation that the NTCP had converted to a NCP, the WCJ further offered Claimant the opportunity to mail in a copy of that notice if he wished to do so. (*Id*.) At the remand hearing on July 24, 2014, the WCJ made clear that she was charged on remand to review the existing record and make findings as to whether Employer and Claimant were aware of "biceps tendinopathy diagnosis" at the time of the C&R Agreement. (July 24, 2014 H.T at 5.) Claimant asserted at that time that he had previously submitted "documentation which diagnosed – that stated that I had this biceps problem in 2004, and [Employer] knew it." (*Id*. at 7.) The record discloses no such evidence. At the April 12, 2016 hearing, Claimant asserted that the evidentiary record had never been closed and could not therefore be properly certified; he argued that the WCJ should have, but did not accept evidence Claimant submitted from "[his] doctors; Dr. John Williams and James Donday and Dr. Hoffman." (April 12, 2016 H.T. at 8.) At the February 21, 2017 hearing, Claimant again raised his argument that the evidentiary record lacked, and the WCJ had failed to consider, medical evidence that he had attempted to submit. He stated, "On 7/24 of 2014 I gave you documentation, existing, showing you that the claim – that [Employer] gave the evidence in that, knew that I had biceps…tendonitis as of those forms that I gave you. But you failed to consider those forms." (February 21, 2017 H.T. at 7.) Claimant further stated, "[t]hey knew that I was injured…yet, for some strange reason it disappeared. I bring the evidence to you. I give you the documents. I give you MRIs from 2012, 2014, 2015, yet you still don't want to consider it." (*Id*. at 14.) Here, notwithstanding Claimant's vague assertions that the record is incomplete, there is simply no evidence to suggest a diagnosis or even mention of biceps tendinopathy prior to the date when the C&R Agreement was signed.

[8] Added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5(b).

10

for in the Act and that the claimant understands the full legal significance of the document. 77 P.S. § 1000.5(b). The Act requires that every C&R Agreement set forth details of the claim, including "the nature of the injury," and that the "agreement must be explicit with regard to the payment, if any, of reasonable, necessary and related medical expenses." 77 P.S. § 1000.5(b), (c)(3). The record is clear that all of these requirements were met.

As this Court has previously explained, by enacting Section 449 of the Act, the General Assembly intended to place compromise and release agreements "'on equal footing with civil settlements' in order to promote a public policy of encouraging the parties to settle disputes and bring them to finality." *DePue v. Workers' Compensation Appeal Board (N. Paone Construction, Inc.)*, 61 A.3d 1062, 1066 (Pa. Cmwlth. 2013) (quoting *Stroehmann Bakeries, Inc. v. Workers' Compensation Appeal Board (Plouse),* 768 A.2d 1193, 1196 (Pa. Cmwlth. 2001)). Thus, once a C&R agreement is approved by a WCJ, it is final, conclusive and binding on the parties, and an agreement may not be set aside absent a clear showing of fraud, deception, duress, mutual mistake or unilateral mistake attributable to an opposing party's fault. *Haslam v. Workers' Compensation Appeal Board (London Grove Communication)*, 169 A.3d 704, 709 (Pa. Cmwlth. 2017); *DePue*, 61 A.3d at 1067. Any issue that is not expressly reserved in a C&R agreement may not be raised in a later proceeding. *DePue*, 61 A.3d at 1067; *Department of Labor and Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (U.S. Food Service),* 932 A.2d 309, 314-15 (Pa. Cmwlth. 2007).

Claimant has offered no evidence of fraud, deception, duress, mutual mistake or unilateral mistake attributable to an opposing party's fault. There is no evidence that Claimant's assent to the C&R Agreement was not given voluntarily, nor has he offered proof that he was pressured from any source to sign it. The

11

transcript of the June 4, 2007 hearing on the C&R Agreement documents Employer's counsel's meeting with Claimant prior to the hearing, during which counsel discussed the document and answered questions from Claimant regarding social security and child support language contained therein to Claimant's satisfaction. (Hearing Transcript (H.T.) at 8.) Claimant confirmed during the hearing that he had sustained injuries to both his left and right shoulders. (H.T. at 9.) Counsel for Employer questioned Claimant as to whether he understood that "if tomorrow you go to the doctor or next week or next month or next year, if you have the [WCJ] approve this agreement, your medical bills are your responsibility," and he replied that he did. (H.T. at 10.) He acknowledged his right to be represented by, and his decision to proceed without, an attorney as well as his decision to waive his right to appeal the WCJ's decision, should she approve the C&R Agreement, in order to receive this money more quickly. (H.T. at 11.) The WCJ also questioned Claimant during the hearing regarding his decision not to retain counsel; she recalled the fact that Claimant had previously participated in a mandatory mediation with another judge, and Claimant confirmed that he had in fact agreed to a settlement amount in excess of what the mediation conference judge had recommended. (H.T. at 14.) He also acknowledged his intent to withdraw his earlier appeal to the Board. (H.T. at 15.) In its opinion, the Board accurately summarized the evidence presented by Claimant in this proceeding:

> Claimant presented an October 2, 2012 letter from G. Russell Huffman, M.D., directed to another physician. He indicated that he saw Claimant on that date and had not seen him since April 2008. He stated that he had performed a left shoulder rotator cuff repair and a revision cuff repair and decompression on the contralateral side was done previously. Claimant reached maximum medical improvement. The doctor stated that Claimant

12

had complaints in both shoulders and noted the region of the biceps for the greatest source of pain…He indicated that he would get Claimant into physical therapy and wanted to review MRI studies. In an April 12, 2013 note, Dr. Huffman indicated that Claimant was under his care for left shoulder injury and was scheduled for surgery for "biceps tendinopathy." Dr. Huffman stated, in a September 12, 2006 note, that Claimant returned for a follow up of his left shoulder and had reached maximum medical improvement. He indicated from the standpoint of his impingement and rotator cuff tears, he will likely have further symptoms down the road and that would probably preclude him from any heavy labor or overhead work or repetitive motion with his upper extremities.

(March 16, 2018 Board Opinion at 5-6 (citations omitted).) Other than Claimant's bare assertion that both Employer and Claimant's physicians were aware of a diagnosis of biceps tendinopathy, the record is devoid of evidence that such condition was known at the time the C&R Agreement was executed.

Accordingly, we affirm the WCJ's denial of the review and reinstatement petitions. Furthermore, because Claimant did not prove that Employer violated the Act or its regulations, the WCJ also appropriately denied the Penalty Petition. *See Dixon v. Workers' Compensation Appeal Board (Medrad, Inc.)*, 134 A.3d 518, 525 (Pa. Cmwlth. 2016) ("a violation of the Act or its regulations must appear in the record for a penalty to be appropriate") (quoting *Gumm v. Workers' Compensation Appeal Board (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008)).

The order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Gary,                          :
                                      :
                    Petitioner        :
                                      :
          v.                          :  No. 581 C.D. 2018
                                      :
Workers' Compensation Appeal          :
Board (J.D. Eckman, Inc.),            :
                                      :
                    Respondent        :

## ORDER

AND NOW, this 4th day of December, 2018, the order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**